(No. 4447-)

VALLEY E. GROSS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 10, 1952.*

JOSEPH M. DE LAURENTI, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; CHARLES H. EVANS, Assistant Attorney General, for Respondent.

DELANEY, J.

Claimant filed his complaint herein on June 18, 1951 seeking an award under the provisions of the Workmen's Compensation Act.

On October 13, 1950, Valley E. Gross was employed by the respondent as a Visitor of the Illinois Relief Commission in the Madison County Department of Welfare. Mr. Gross was sitting at a desk in a swivel tilt back chair. He leaned back, and the chair overturned.

No jurisdictional question is raised. Respondent and claimant were operating under the Workmen's Compensation Act, and the accident in question arose out of and in the course of the employment.

The record consists of the complaint, motion of respondent for an extension of time in which to file pleadings, order of the Chief Justice granting respondent an extension of thirty days in which to file pleadings, Departmental Report, deposition of Dr. Francis

M. Barnes, Jr. taken on January 15, 1952, transcript of evidence taken on February 28, 1952, claimant's exhibit No. 1, original stipulation relative to claimant's exhibits Nos. A - F, inc., and copy of the stipulation.

Mr. Gross was absent from his employment from October 19, 1950 to February 1, 1951. He returned to his employment February 1, 1951, and worked to March 8, 1951. From March 8, 1951 to June 16, 1951 Mr. Gross was put on a leave of absence with pay. Mr. Gross has not worked since March 8, 1951.

The medical evidence in this case consists of claimant's exhibit No. 1, and the deposition of Dr. Francis W. Barnes, who examined the claimant on November 28, 1951, and again on January 8, 1952.

Exhibit No. 1 states that claimant was seen by Dr. Hediger of Highland, Illinois for ten days beginning on November 16, 1950, from whom he received some hypodermic medication and pills. He was then referred to Dr. Rehberger, a chiropractic physician, for one week. Dr. Hediger then referred claimant to Dr. Jones, who hospitalized him at Missouri Baptist Hospital on November 7, 1950, and from which he was discharged on November 21, 1950. Dr. Jones' final diagnosis was "Neuropathy, multiple, due to unknown cause." Claimant was discharged with condition unchanged. (Claimant's exhibit No. 1, page 38 trans.)

Claimant entered Jefferson Barracks Hospital, and on May 13, 1951 was seen by Dr. J. J. Gitt, Consultant in Neurology. Dr. Gitt's findings revealed all deep reflexes were gone except the left biceps in the right knee with summation. There was a questionable dorsal flicker on the left. Conclusion was, patient had an involvement of the cord secondary to trauma. Recommendations for rectal examination, and X-Rays of the

coccygeal spine were made. Therapy with large doses of Vitamin B-12 was made. The patient was seen in Orthopedic Consultation on May 1, 1951 on account of the pain in the coccygeal region. Consultation Report by Dr. Donald O. Burst, Orthopedic Consultant, revealed only slight tenderness on pressure of the coccyx externally, and rectally over the coccyx, and otherwise there were no irregularities. Rectal examination revealed absolutely no pain on motion of the coccyx. Impression was, "No organic bone pathology found in the coccyx, and recommend no treatment at all". The patient was seen by Dr. H. Schwartz, Neurosurgical Consultant, following a request dated April 25, 1951 (exact date of consultation unknown due to lack of notation). Dr. Schwartz noted that the tendon reflexes were markedly depressed, obtained with reinforcement. The impression was a polyneuritis. This patient was seen by Dr. J. J. Corda, Genitourinary Consultant on April 30, 1951, who stated that the prostate gland had not changed any during the past four months; there have been no urinary symptoms. (Was seen in private consultation by Dr. Corda.) X-Ray examinations: X-Ray of the chest, April 16, 1951, was essentially negative. Examination of the sacrum in the A-P and lateral views failed to reveal evidence of pathology of the bony structure. This was dated April 16, 1951. X-Ray examination of the lumbosacral spine, April 2, 1951, showed the presence of osteophytic changes characterized by lipping and spur formation, which was best visualized in the lower lumbar vertebrae and the anterior portions of the bodies. There also appeared to be failure of fusion of the isthmus of L-5 on the left side, but no accompanying spondylolisthesis was visualized. Reports are by Radiologist, S. Kamberg, M.D. Labora-

tory examinations: Alkaline phosphate 1.2 Bod. Units. Acid phosphates 1.6 K.A.U. Icteric index 5.1 units. RBC 4.93 million. Hemoglobin 96%, 14.9 grams. Spinal fluid examination: Zero WBC; 4% RBC, all show some crenation; Sugar 7 mg.%.; Globulin, weakly positive; total protein 70 mg.%; complement fixation negative. Gold curve was unsatisfactory. Kahn Test was negative. White Blood Cell count 7,700; stabs 5, segs. 50. Lymphocytes 38, monocytes 5, eosinophils 2. The urine examination was within normal limits.

The patient was placed on Vitamin B-12 Rubrumin, 30 micrograms, daily, for two weeks. Following this, he was put on multivitamin capsules, 1 t.i.d. He was continued following Rubrumin with Vitamin B, 100 mg, t.i.d. Following this treatment, the patient showed improvement. The patient was seen by Neurological Consultant, Dr. Gitt, again on May 14, 1951. The patient revealed to the Consultant that he has definitely improved; the pain in the coccygeal region had diminished. Recommendation for continuance of Vitamin B-12 made.

Inasmuch as the patient had expressed improvement on the Vitamin therapy, it was felt he could be discharged, maximum hospital benefits. The patient was to continue his medication on the outside, and was advised to return to the hospital periodically for checkups. Examination of reflexes prior to discharge, revealed depressed deep reflexes, and slight elicitation only on reinforcement. There continued to be positive toe signs. The patient is to be discharged May 19, 1951, M.H.B. Diagnosis:

1. Neuropathy, multiple, with history of onset following fall from a tilted chair (October 13, 1950) Date:

May 13, 1951.

Treated—Improved (slight.)

Prognosis is guarded. Disability is moderate.

Recommendation: It is further recommended that this patient does not resume any laborious physical or mental tasks until there is evidence of final recovery.

> (s) L. M. Hart
> L. M. Hart, M.D.
> Psychiatric and Neurologic
> Service.

(Pages 39-42 Claimant's exhibit No. 1.)

From his examination of the claimant on November 28, 1951 Dr. Francis W. Barnes stated "There were no pathological toe signs. The abdominal and cremasteric reflexes were present. Sensation over the head and trunk were normal. No sensory disturbance in the saddle area. No inco-ordination, no muscle group weakness, no tremors were present.

In the first place, my conclusions show it is my opinion that the fall from the chair was the cause of his condition, neurologically speaking, and his disability resulting from that, but I did not make a definite diagnosis upon the fact that it was from an organic condition. I don't know what it is. There is evidence, but I can't clarify it. To go back to the Jefferson Barracks record where the diagnosis of "Multiple Neuropathy" had been made, well, that don't mean anything. With my statement, *I don't know what it is*, is just as good as that term.

I consider that trauma, as related to have occurred on October 13, 1950, was the cause of his present condition, and also the present disability.

I think the condition is permanent. That would be my opinion. It has been going on for a considerable

length of time with no change that I have been able to discover, and I think it is fixed.

I don't know what to give the man for treatment. I don't know what the trouble is. He has an organic nervous condition. Not knowing exactly what it is, a specific line of treatment would be impossible to lay out. He does need medical observation and indicated treatments, of course.

He could remain under the care of his physician and at his physician's discretion, but seen by a specialist when he thought it should be necessary."

Claimant was 57 years of age at the time of his accident, and he did not have any children under the age of 18 years dependent upon him for support. His annual earnings during the year preceding the accident were $2,868.00. His compensation rate, therefore, would be $15.00 per week. However, as the injury was incurred after July 1, 1949, this must be increased 50%, making his compensation rate $22.50 per week.

From the medical testimony and the other evidence in the record, we find that at the present time the disability condition is temporary, and has not reached a permanent condition. Claimant is entitled to an award under Section 19, Paragraph (b) of the Workmen's Compensation Act to the date of hearing on February 28, 1952, or 71 5/7 weeks at the compensation rate of $22.50 per week, or the sum of $1,613.55, less the sum of $1,397.87 for non-productive time, or a total award of $215.68, payable forthwith.

Dr. Edward L. Hediger rendered the claimant professional services in the amount of $545.00, which is unpaid; Dr. L. P. Rehberger rendered professional services in the amount of $57.50, which amount is unpaid; Dr. Andrew B. Jones rendered professional services in

the amount of $175.00, which is unpaid; Dr. Joseph J. Gitt rendered professional services in the amount of $65.00, which amount is unpaid; Dr. Herbert C. Wiegand rendered professional services in the amount of $35.00, which amount is unpaid; Dr. Justin Cordonnier rendered professional services in the amount of $10.00, which amount is unpaid; and the claimant, Mr. Gross, made payment of $25.00 to Dr. Andrew B. Jones for an initial examination, and made payment to Missouri Baptist Hospital in the amount of $70.00, for which he has not been reimbursed.

An award is made in favor of Dr. Edward L. Hediger for professional services in the amount of $545.00, payable forthwith;

An award is made in favor of Dr. L. P. Rehberger for professional services in the amount of $57.50, payable forthwith;

An award is made in favor of Dr. Andrew B. Jones for professional services in the amount of $175.00, payable forthwith;

An award is made in favor of Dr. Joseph J. Gitt for professional services in the amount of $65.00, payable forthwith;

An award is made in favor of Dr. Herbert C. Wiegand for professional services in the amount of $35.00, payable forthwith;

An award is made in favor of Dr. Justin Cordonnier for professional services in the amount of $10.00, payable forthwith; and

An additional award is made in favor of claimant, Valley E. Gross, in the amount of $95.00, representing a payment he made to Dr. Andrew B. Jones of $25.00, and a payment to Missouri Baptist Hospital of $70.00, payable forthwith.

Betty Jo Zagar was employed to take and transcribe the evidence at the hearing before Commissioner Summers. Charges in the amount of $45.40 were incurred for these services, which charges are fair, reasonable and customary. An award is, therefore, entered in favor of Betty Jo Zagar in the amount of $45.40, payable forthwith.

Henry P. Keefe was also employed to take and transcribe the evidence at an additional hearing before Commissioner Summers. Charges in the amount of $80.00 were incurred for these services, which charges are fair, reasonable and customary. An award is, there-

fore, entered in favor of Henry P. Keefe in the amount of $80.00, payable forthwith.

All future payments being subject to the terms and provisions of the Workmen's Compensation Act of Illinois, jurisdiction of this cause is specifically reserved for the entry of such further orders as may from time to time be necessary.

This award is subject to the approval of the Governor, as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees".